[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11181

_____

D. C. Docket No. 04-00309-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH NEWSOME,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 16, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and COVINGTON,[*] District Judge.

PER CURIAM:

---

[*] Honorable Virginia M. Hernandez Covington, United States District Judge for the Middle District of Florida, sitting by designation.

Kenneth Newsome appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). He first contends that the admission at trial of the statements made during his arrest violated his Fifth Amendment right against self-incrimination. Second, he argues that the pistol found during the warrantless search of his motel room should have been suppressed under both the Fourth and Fifth Amendments. Finally, he alleges that the district court erred in denying his motion for mistrial based on the prosecution's opening statement and that he was entitled to a new trial based on prosecutorial misconduct. We AFFIRM.

## I. BACKGROUND

On 19 August 2004, Kenneth Newsome was arrested as a suspect in the non-fatal shooting of his wife and child that had occurred on 16 August 2004. Prior to Newsome's arrest, a confidential informant ("CI") informed the police that Newsome was staying with a friend, Hope Mitchell, in a motel room rented under her name. Six police officers went to the motel to arrest Newsome. The front desk's records indicated that the room was rented under Mitchell's name and had a copy of her driver's license. The police had the front desk call Newsome's room under the pretext of a cable malfunction to ascertain whether he was in the room alone. The front desk clerk told the police that a woman answered the phone and

that from the telephone conversation, she did not hear a man in the room. The officers knew that Newsome was a violent offender with a previous record and possibly in possession of a gun, so they vacated the surrounding rooms before knocking on Newsome's door several times and identifying themselves as police. After some "silence, the door just swung open." R5-23 at 19. The officers entered with their guns drawn and ordered Newsome to get down on the ground. They secured him with handcuffs, and one officer asked him if there was "anything or anyone in the room that [he] should know about." Id. at 10, 25. Newsome told the officer that he had a gun "over there," motioning with his head in the direction of the nightstand by the bed. Id. at 25. When the officer did not immediately see the gun he asked where it was and Newsome directed the officer to a black bag where the pistol in question was located. This interrogation occurred prior to officers reading Newsome his Miranda rights. The officers secured the bag but waited for a forensics officer to arrive to allow him to remove the gun from the bag. Newsome was escorted from the motel room and read his rights en route to police headquarters.

A grand jury indicted Newsome as a convicted felon in possession of a firearm. He pled not guilty and moved to suppress his statements made during the arrest and the recovered gun. He claimed that his statements were solicited in

3

violation of the Fifth Amendment and that the admission of the gun violated both the Fifth Amendment as "fruit of the poisonous tree" and the Fourth Amendment as evidence garnered from an unlawful search and seizure.

The magistrate judge found that the public safety exception to Miranda applied and recommended the admission of both Newsome's statements and the gun. The district court summarily adopted the magistrate judge's recommendation and denied Newsome's motion to suppress.

The case proceeded to trial. Prior to trial, the district court decided to exclude any testimony regarding Newsome shooting his wife and child as irrelevant and prejudicial. The court instructed the prosecution that Newsome's wife could only testify that she saw Newsome with a gun and that shots were fired. Nonetheless, during its opening statement, the government informed the jurors that Newsome's wife told the police that her husband had shot her. Newsome moved for a mistrial, but the district court denied the motion, finding that the prosecutor's error was not so prejudicial as to merit a mistrial. The court instructed the jury that the lawyers' statements were not evidence and determined that its curative instruction was sufficient to avoid any prejudice. The trial proceeded, and the jury eventually found Newsome guilty. This appeal followed.

## II. DISCUSSION

Newsome contends that the district court erred in denying his motion to suppress the statements made during his arrest and the pistol found in his motel room. With regard to the motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. United States v. Nunez, 455 F.3d 1223, 1225 (11th Cir. 2006) (per curiam) (citation omitted). "[A]ll facts are construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000) (citation omitted). "The individual challenging the search bears the burdens of proof and persuasion." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (citation omitted).

While we have repeatedly stated that "[w]e review the district court's findings of fact on a motion to suppress only for clear error, with the record being viewed in the light most favorable to the party prevailing below," see, e.g., United States v. Gonzalez, 70 F.3d 1236, 1238 (11th Cir. 1995) (per curiam) (citation omitted), we have never explicitly clarified whether the review is restricted to the record made at the suppression hearing. In Moll v. United States, we considered the entire record in a review of a denial of a motion to suppress. 413 F.2d 1233, 1235 (5th Cir. 1969) (setting forth the facts as established by "[t]he testimony at pre-trial hearings on motion to suppress, plus that at the trial"). Additionally,

5

other circuits have held that they may consider the entire record when reviewing a denial of a motion to suppress. See United States v. Corona-Chavez, 328 F.3d 974, 979 n.5 (8th Cir. 2003) ("This court considers the entire record, including trial testimony, in reviewing denial of a motion to suppress."); United States v. Herrera, 810 F.2d 989, 989-90 (10th Cir. 1987) (per curiam) (citation omitted) ("[W]e consider the entire record including the hearing on the motion to suppress and the trial record and transcript."); Gov't of the Virgin Islands v. Williams, 739 F.2d 936, 939 (3d Cir. 1984) ("In making . . . a determination [regarding the legality of a search,] this court may look at the entire record . . . [and] is not restricted to the evidence presented at the suppression hearing where the motion was denied."). We adopt our sister circuit's holdings that in reviewing a denial of a motion to suppress, we review the entire record, including trial testimony.

A. The Fifth Amendment Challenge and the Threat to Public Safety Exception

Newsome contends that the court's admission of his statements concerning the gun violated his Fifth Amendment right against self-incrimination because those statements were made before he received his Miranda warnings. He asserts that the district court erred in applying the public safety exception to Miranda, because any danger had been neutralized prior to the questioning.

6

Miranda v. Arizona, 384 U.S. 436, 445, 86 S. Ct. 1602, 1612 (1966), established that custodial interrogation cannot occur before a suspect is warned of his or her rights against self-incrimination. Here, Newsome was in the process of being secured and taken into custody when he was interrogated, and he was not warned of his rights before the questioning at issue took place. In New York v. Quarles, 467 U.S. 649, 657-58, 104 S. Ct. 2626, 2632 (1984), however, the Supreme Court established a narrow exception to Miranda for situations where there is a threat to public safety.

The public safety exception allows officers to question a suspect without first Mirandizing him when necessary to protect either themselves or the general public. Id. at 655-58, 104 S. Ct. at 2631–32. For example, in Quarles, an armed suspect ran into a crowded supermarket where he was apprehended by the police. Id. at 651–52, 104 S. Ct. at 2629. The officers searched the suspect and found an empty shoulder harness. Id. Without first giving the Miranda warnings, they asked him where he had put the gun. Id. The suspect told the officers that the gun was under some empty cartons in the store, and the gun was recovered. Id. The Court determined that even though the suspect was handcuffed and posed no threat to the officers when questioned, the interrogation was permissible because the gun created a clear danger to the public. The Court held that "the need for

7

answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 657, 104 S. Ct. at 2632. The exception to Miranda also applies where there is a threat to the officers rather than the public. Id. at 659, 104 S. Ct. at 2633.

We conclude that there was no violation of the Fifth Amendment in admitting Newsome's statements because the public safety exception applies. The officers entered the motel room under the impression that there were at least two people in the room—Newsome, who they encountered at the door and the "female" that the desk clerk indicated had answered the telephone moments earlier. Furthermore, the officers knew that they were dealing with a possibly armed, violent felon. Although Newsome contends that the officers continued questioning after the room was secure, the officers' testimony at the motion to suppress hearing and at trial established a very rapid sequence of events.

Newsome was questioned about whether anything or anyone else was in the room right after the officers ordered him to the ground and while he was being secured. At the same time, other officers were securing the room to ensure that no weapons or other individuals were present. At the time the question was asked, the officers had reason to suspect that Newsome was with another person and did

8

not know if anyone else was hiding in the room or bathroom. The officers reasonably believed that they were in danger, and they acted accordingly to protect themselves and other motel guests in making the arrest.

The officer asked what was necessary to secure the scene. He first asked: "Is there anything or anyone in the room that I should know about?" and then followed up to pinpoint the exact location of the gun. R5-23 at 25. We do not find the broad phrasing of the officer's question here problematic. An officer is not expected to craft a perfect question in the heat of the moment. United States v. Williams, 181 F.3d 945, 954 n.13 (8th Cir. 1999) ("The fact that the question was also broad enough to elicit other information does not prevent application of the public safety exception when safety was at issue. Moreover, we believe that conditioning admissibility of evidence under the public safety exception on an officer's ability to ask questions in a specific form would run counter to the Quarles Court's decision that an officer may forego announcement of Miranda warnings when public safety is threatened."); see also United States v. Estrada, 430 F.3d 606, 612-13 (2d Cir. 2005).

Newsome's statements fall under the public safety exception to Miranda and were properly admitted at trial. The questioning officer took a simple safety

9

measure to protect all officers present had a gun fight ensued.  The officer's

questions clearly were focused on securing the area and protecting the officers.

B.  The Seizure of the Gun

We must also determine whether the district court's admission of the gun

found in Newsome's possession was proper.  Newsome contends that allowing the

gun into evidence violated both his  Fifth Amendment right against self-

incrimination and his Fourth Amendment right against unlawful search and

seizure.  He first claims that the gun constituted "fruit of the poisonous tree"

because it was found after an unconstitutional interrogation.  See Wong Sun v.

United States, 371 U.S. 471, 83 S. Ct. 407 (1963).  Second, he claims that the

warrantless search of his bag was an unconstitutional search and seizure with no

applicable exception.

We first address the Fifth Amendment claim.  As we held above, the public

safety exception applies to these facts.  Under the exception, both "a defendant's

statement—and the physical evidence recovered as a result of that statement—may

be admitted into evidence at trial." United States v. Estrada, 430 F.3d 606, 610

(2d Cir. 2005) (citation omitted).  It would defy common sense to allow the

officers to question Newsome as to whether there was any threat and then prevent

them from neutralizing that threat.  The gun was found as a direct result of

10

Newsome's statement. That statement falls within the public safety exception, and its admission does not violate the Fifth Amendment. Because there was no Fifth Amendment violation, the evidence obtained from the search was properly admitted.

Second, we consider Newsome's Fourth Amendment claim, but again we find no constitutional violation. "The Fourth Amendment protects [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United States v. Martin, 297 F.3d 1308, 1312 (11th Cir. 2002) (internal quotations and citation omitted). But the Supreme Court has "long recognized an exigent-circumstances exception to the warrant requirement in the Fourth Amendment context." Quarles, 467 U.S. at 653 n.3, 104 S. Ct. at 2630 n.3 (citations omitted). Quarles holds that the warrantless seizure of a gun is "objectively reasonable" under the Fourth Amendment when there is a real concern for the safety of the officers present or the public at large. Id. (citations omitted); United States v. Antwine, 873 F.2d 1144, 1147 (8th Cir. 1989).

The undisputed testimony during trial shows that at least one officer searched the bag at or around the time that Newsome was questioned. At trial, Officer Dion Hurley testified that immediately after Newsome said that the gun

11

was in the bag, the officers opened the bag and saw the gun in the bag. Furthermore, the trial testimony regarding the time the bag was searched is consistent with the testimony given at the suppression hearing on the same issue. There is no testimony or finding of fact from the suppression hearing that is inconsistent with Hurley's testimony at trial. During his testimony at the suppression hearing, Officer Armando Villegas read his police report, which stated that he did not search the bag at the time that Newsome was questioned. The report did not state that no officer looked in the bag, nor did Villegas testify to that effect at the suppression hearing. Contrary to the assertion by Newsome, Villegas's testimony regarding when the bag was opened is not inconsistent with Hurley's testimony on the same subject. As for the findings of fact from the suppression hearing, the magistrate judge found that the gun was later retrieved by a forensic officer but the magistrate judge did not find that no officer looked in the bag at the time that Newsome was questioned.

This case presented exigent circumstances necessitating the seizure of the gun. At the time the officers secured the gun, they were conducting a search of the room and had reason to believe that someone else may have been with Newsome. It was not unreasonable for the officers to fear leaving a loaded gun, likely evidence of a crime (the alleged shooting of his wife and child), unattended in a

motel room. Nor was it unlikely that a friend, possibly Mitchell, would return to the room and remove the gun. We have held that officers can seize evidence where there is a fear that it might disappear or be destroyed. United States v. Blasco, 702 F.2d 1315, 1325 (11th Cir. 1983), cert. denied, 464 U.S. 914, 104 S. Ct. 275 (1983) ("The exigent circumstances exception to the fourth amendment warrant requirement applies in 'those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.'" (quoting Arkansas v. Sanders, 442 U.S. 753, 759, 99 S. Ct. 2586, 2590 (1979))). The exigent circumstances exception to the Fourth Amendment permitted locating and securing the weapon, making the seizure and subsequent admission of the gun proper. Thus, both Newsome's statements and the gun were properly admitted.

C. Prosecutorial Misconduct

Finally, we consider whether the district court erred in denying Newsome's motion for a mistrial and whether Newsome is entitled to a new trial based on prosecutorial misconduct. Newsome contends that the district court erred in failing to grant a mistrial because he was materially prejudiced by the prosecutor's opening statement that Newsome's wife told the police that her husband had shot her.

13

We review for abuse of discretion the district court's decision not to grant a mistrial. United States v. Satterfield, 743 F.2d 827, 848 (11th Cir. 1984). We have noted that "[a] trial judge has discretion to grant a mistrial since he [or she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Delgado, 321 F.3d 1338, 1346–47 (11th Cir. 2003) (internal quotations and citation omitted). A mistrial should be granted if the defendant's substantial rights are prejudicially affected. This occurs when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different. United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998) (citation omitted). We make this determination in the context of the entire trial and in light of any curative instruction. Id. (citations omitted). "[W]hen a district court gives a curative instruction, the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." Delgado, 321 F.3d at 1347 (internal quotations and citations omitted). Furthermore, when the record contains sufficient independent evidence of guilt, any error was harmless. United States v. Adams, 74 F.3d 1093, 1097-98 (11th Cir. 1996) (We need a "reasonable probability that, but for the remarks, the outcome would be different.").

We find no abuse of discretion in the district court's denial of Newsome's motion for a mistrial. The court instructed the jury that the lawyers' statements were not evidence. It determined that the prosecutor's single statement did not inflict the kind of prejudice necessary to warrant a mistrial. We find that this curative instruction was sufficient and that any error was harmless. There was independent evidence that Newsome was in possession of a firearm, and Newsome cannot show a reasonable probability that the outcome would have been different absent the prosecutor's statement. The motion for mistrial was properly denied.

## III.  CONCLUSION

Because we find that the admission of Newsome's statements made during his arrest did not violate his Fifth Amendment right against self-incrimination, the district court did not err in admitting the pistol found during the warrantless search of his motel room. Additionally, we find no abuse of discretion in the district court's denial of Newsome's motion for a mistrial regarding the prosecutor's opening statement because the curative instruction was sufficient and any error was harmless.

**AFFIRMED.**