[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16287
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20491-JAL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANA LAZARUS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 13, 2014)

Before TJOFLAT, HULL and JORDAN, Circuit Judges.

PER CURIAM:

Following a jury trial, Ana Lazarus appeals her convictions for access device fraud, in violation of 18 U.S.C. § 1029(a)(2), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  On appeal, Lazarus challenges the district court's denial of her motion to suppress her confession given three years before her arrest.  After review, we affirm.

## I.  BACKGROUND FACTS

In August 2009, the United States Secret Service, after receiving a complaint, began investigating L&S Travel for credit card fraud.  On September 15, 2009, two Secret Service agents interviewed Defendant Lazarus, an employee of L&S Travel, at L&S Travel's office.  During the interview, Defendant Lazarus confessed that she had used credit card numbers from old L&S Travel customers to pay for the vacations Lazarus booked for new customers, had the new customers use PayPal to pay for their vacations, and then stole the money from the PayPal accounts.

In June 2012, a grand jury indicted Lazarus on the above two counts.  Prior to trial, Lazarus moved to suppress her 2009 statement to the Secret Service agents.  Lazarus argued that she was subject to a custodial interrogation without first being given Miranda warnings and that her confession was involuntary.  After a suppression hearing, the district court denied Lazarus's motion to suppress, concluding that Lazarus was not "in custody" when she confessed and thus no

2

Miranda warnings were required.  The district court also found that Lazarus's

confession was voluntary.

A jury convicted Lazarus of both counts.  The district court sentenced

Lazarus to a total term of 30 months' imprisonment.  Lazarus appealed.

## II.  DISCUSSION

### A.    Whether Lazarus Was "In Custody"

Under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), "custodial

interrogation cannot occur before a suspect is warned of his or her rights against

self-incrimination."  United States v. Newsome, 475 F.3d 1221, 1224 (11th Cir.

2007).  "Custodial interrogation" is defined as "questioning initiated by law

enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way."  Miranda, 384 U.S. at

444, 86 S. Ct. at 1612.  An individual is considered to be "in custody" for purposes

of receiving Miranda protection where "there is a formal arrest or restraint on

freedom of movement of the degree associated with a formal arrest."  California v.

Beheler, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (quotation marks

omitted).

In making this determination, based on the totality of the circumstances, the

courts look to whether an objectively reasonable person in the defendant's position

would feel a restraint on his freedom of movement to such an extent that he would

3

not feel free to leave.  United States v. Brown, 441 F.3d 1330, 1348-49 (11th Cir. 2006); United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001).  The totality of the circumstances include consideration of whether the officers brandished weapons or touched the defendant, whether the officers used a language or tone indicating that compliance with their orders could be compelled, and the location and length of the detention.  United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010).[1]

The district court correctly denied Lazarus's motion to suppress her statements because she was not "in custody" during her brief interview with the Secret Service agents at her travel office.  According to the evidence at the suppression hearing, the agents contacted Lazarus ahead of time to arrange an interview.  Lazarus selected the date and time of her interview, which occurred at a neutral location, an office at her workplace.  Lazarus was willing to meet with the agents despite her awareness prior to the interview that they were coming to talk to her about credit card fraud at the travel agency.  The interview lasted between ten and twenty minutes.

During the interview, the agents did not brandish their weapons, touch Lazarus beyond a possible handshake, raise their voices or threaten her, or tell her

---

[1]The district court's denial of a motion to suppress is a mixed question of law and fact. United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009).  We review the district court's legal rulings de novo, and the district court's fact findings for clear error and in the light most favorable to the prevailing party.  Id.

she could not leave.  Likewise, Lazarus never asked to postpone or leave the interview, even though she was not feeling well at the time.  The agents readily agreed to end the interview as soon as they were asked to by Lazarus's husband.  This evidence, viewed in the light most favorable to the government, amply supports the district court's finding that, under the totality of the circumstances, a reasonable person would not have felt her freedom of action constrained to the degree associated with formal arrest.

Lazarus focuses on the fact that during the interview one of the agents accused her of committing the credit card fraud.  Specifically, based on information from L&S Travel's owner, John Shepard, and from Lazarus during the early part of the interview, the agents began to suspect that Lazarus was the only person operating L&S Travel and, therefore, Lazarus was the person who fraudulently used the credit cards.  During the interview, one of the agents stated, "Come one.  It was you taking the credit card.  We know it's you.  You're the only person who's operating [the travel agency].  We know it's you using these credit cards."  In response, Lazarus admitted to the scheme.

Lazarus contends that this direct accusation during the interview transformed it into a custodial interrogation, citing United States v. Acosta, 363 F.3d 1141 (11th Cir. 2004), and United States v. Jayyousi, 657 F.3d 1085 (11th Cir. 2011).  Lazarus's reliance on Acosta and Jayyousi is misplaced.  First, in Acosta we

5

concluded that a <u>Terry</u> stop, during which weapons were initially drawn, was <u>not</u> custodial for <u>Miranda</u> purposes.  363 F.3d at 1148-50.  <u>Acosta</u> does not support Lazarus's argument.

Second, Lazarus's case is materially different from <u>Jayyousi</u>.  <u>Jayyousi</u> dealt with an airplane passenger who, after entering customs, was detained for hours by four armed FBI agents in an isolated, windowless conference room and who attempted to end the interview after the FBI agents accused him of being an al-Qaeda terrorist and then was arrested.  657 F.3d at 1109-11, 1127-29.  None of those coercive circumstances existed in Lazarus's interview.  Notably, even in those <u>Jayyousi</u> circumstances, we concluded that the interrogation became custodial only after the agents made the accusation and the defendant tried to leave.  <u>Id.</u> at 1110.  Although the accusation marked the point at which the particular interrogation in <u>Jayyousi</u> became custodial, <u>Jayyousi</u> did not say that every time an officer makes an accusation, the interview becomes custodial.

Moreover, the Supreme Court has instructed just the opposite.  While an officer's suspicions regarding a suspect "may bear upon the custody issue if they are conveyed" to the suspect, "[e]ven a clear statement from an officer that a person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."  <u>Stansbury v. California</u>, 511 U.S. 318, 325, 114 S. Ct. 1526, 1530

6

(1994). Rather, whether the interview is custodial depends upon the totality of the circumstances, and "[t]he weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case." Id.

Here, none of the other coercive circumstances found in Jayyousi were present during Lazarus's brief interview conducted at a place and time of her own choosing. The Secret Service agent's statement during the interview that he knew Lazarus was the one using the credit cards did not transform the interview into a custodial interrogation.

**B.    Whether Lazarus's Confession Was Voluntary**

Even if no Miranda violation occurred, the court still must determine that any confessions or incriminatory statements made by a defendant were voluntary in order to admit them at trial. United States v. Bernal-Benitez, 594 F.3d 1303, 1317-18 (11th Cir. 2010). In making this determination, the court considers the totality of the circumstances, such as "the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Id. at 1319 (quotation marks omitted).[2]

---

[2]"The district court's ultimate conclusion on the voluntariness of a confession, or the waiver of Miranda rights, raises questions of law to be reviewed de novo." United States v. Barbour, 70 F.3d 580, 584 (11th Cir. 1995).

7

At the suppression hearing, several witnesses testified that, on the morning of the interview, Lazarus, a recently diagnosed diabetic, was feeling faint and experiencing low blood sugar. When she arrived at the office at 10:00 a.m., a coworker helped Lazarus to a couch, gave her some water and candy, and called Lazarus's husband to tell him to come to the office. At that point, Lazarus seemed coherent and communicative, but out of breath.

The agents arrived about five minutes after Lazarus. Just before the agents walked in, Lazarus tested her blood sugar, and it was very low. When the agents arrived, Lazarus rose from the couch and accompanied them into a small, inner office. Lazarus did not try to reschedule the interview and was not nervous about talking with the agents. During the interview, Lazarus sat at a desk, while the two agents sat in chairs facing the desk. Lazarus appeared lucid, but tired and leaned over the desk. Lazarus admitted that she understood the agents' questions and that they did not threaten her. Lazarus checked her blood sugar again in front of the agents, and it was starting to get better. Lazarus said that her blood sugar continued to rise during the interview, which lasted twenty minutes at most. After the interview, Lazarus still felt unwell, and ultimately went home at about 1:20 p.m.

Given these facts, the district court did not err in finding that Lazarus's confession was voluntary. Lazarus's confession was made during a brief, non-

8

custodial interview during which she was not subject to any threats and was not physically detained.

Lazarus compares herself to the defendants in Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408 (1978), and Blackburn v. Alabama, 361 U.S. 199, 80 S. Ct. 274 (1960), but the facts there are wholly different.  In Mincey, the defendant was severely wounded and in substantial pain, nearly catatonically depressed, lying in a bed in the hospital intensive care unit, and was obviously confused and disoriented. See Mincey, 437 U.S. at 396-99, 98 S. Ct. at 2415-17.  The Blackburn defendant was believed to be mentally incompetent and was questioned at a police station for eight or nine hours in a "tiny" interrogation room "filled with police officers," not at his own office for ten or twenty minutes.  See Blackburn, 361 U.S. at 204, 207-08, 80 S. Ct. at 278, 280-81.

In contrast, Lazarus merely felt tired and faint, but was lucid, understood all of the agents' questions, and was not nervous.  In fact, Lazarus testified that she drove herself to work, that she rose from the couch under her own power when the agents arrived, that her blood sugar levels continued to improve throughout the short interview, and that she remained at the office for another three hours after the agents left.  Although during the interview the agents directly confronted her about her probable guilt, Lazarus was never told she was required to answer any

9

questions, she was not threatened by the agents, and she did not ask that the interview end.

In sum, we find no reversible error in the district court's findings that Lazarus's confession was not made during a custodial interrogation and that it was voluntarily given. Accordingly, we affirm the district court's denial of Lazarus's motion to suppress her confession.

**AFFIRMED.**