[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11066
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20181-JAL-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERT HARRIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 11, 2015)

Before JULIE CARNES, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

After entering a conditional guilty plea, Robert Harris appeals the district court's denial of his motion to suppress the cocaine police found in his car that led to his arrest and conviction.[1]  After careful review, we affirm.

I.

The following facts were elicited at a magistrate judge's hearing on Mr. Harris's motion to suppress.  In 2009, the Federal Bureau of Investigation ("FBI") and the Miami-Dade Police Department began investigating a man named British Taylor, whom agents suspected had committed various narcotics and firearms crimes in the Miami, Florida area.  After a confidential informant made a number of narcotics purchases from Mr. Taylor, the FBI obtained authorization to wiretap a telephone number associated with Mr. Taylor.  Agents learned from the wiretapped phone calls, which took place in November and December 2010, that Mr. Taylor's main narcotics supplier was a man named Darryl Thompson.  Agents also learned from the wiretap that Mr. Taylor exchanged numerous calls with the user of a telephone number beginning with 239, a Fort Myers, Florida area code.

Agents gleaned from Mr. Taylor's phone calls with the 239 number that the user of that number planned to travel to Miami to purchase cocaine.   In one of those calls on December 1, 2010, Mr. Taylor asked the 239 user how much cocaine

---

[1] Mr. Harris was indicted for conspiring to possess with intent to distribute cocaine, in violation of 18 U.S.C. § 846 (Count 1), and a substantive count of possession of cocaine with intent to distribute, in violation of 18 U.S.C. § 841(a)(1) (Count 2).  Pursuant to his plea agreement, he pled guilty only to Count 1, and Count 2 was dismissed.

2

the user would be purchasing and when he would be coming to Miami so that Mr. Taylor could relay that information to Mr. Thompson.  The 239 user told Mr. Taylor that he wanted to purchase "10."  FBI agent Dearl Webber, who had been investigating Mr. Taylor since 2009, testified at the suppression hearing that he understood the 239 user to mean he wanted to purchase 10 ounces of cocaine.  The 239 user also indicated on the call that he would be driving to Mr. Thompson's residence, the location of which FBI agents recently had identified.

That same morning, as a result of the information obtained in these phone calls, FBI agents set up surveillance near Mr. Thompson's residence.  As the day progressed, the 239 user placed several calls to Mr. Taylor asking for directions. Then, at 7:00 p.m., the 239 user called Mr. Taylor to inform him that the 239 user was at a McDonalds restaurant near Mr. Thompson's residence.  Agents casing the area spotted a green Saturn sedan at the McDonalds the 239 user identified. Shortly thereafter, around 7:35 p.m., other agents, including Agent Webber, stationed near Mr. Thompson's residence reported three cars arriving at the residence in close succession—Mr. Thompson's car, Mr. Taylor's car, and, moments later, a dark colored sedan.  After about 25 minutes, the agents saw Mr. Taylor's car depart and drive westbound and the sedan depart and drive eastbound.

Agents followed the sedan, which they recognized as a green Saturn.  One of the car's tail lights was not functioning, so the agents radioed Miami-Dade Police

3

Detective Carl Baaske, stationed nearby, to conduct a traffic stop.  Minutes later, Detective Baaske observed the green Saturn and its unlit tail light, illuminated his police lights, and initiated a stop.  Mr. Harris, the Saturn's driver, stopped the car.  Detective Baaske approached the Saturn, observed Mr. Harris, a woman, and an infant in the car, told Mr. Harris that he had been stopped because of the tail light, and then obtained Mr. Harris's driver's license and registration.  As Detective Baaske walked away from the Saturn to return to his car, he noticed that Mr. Harris's driver's license indicated he resided in Fort Myers, which has a 239 area code.  When Detective Baaske returned to the Saturn, he asked Mr. Harris to step out of the car, telling Mr. Harris that the police were searching the area for a robbery suspect.  This was true:  earlier in the evening, a nearby food market had been robbed, and police had set up a perimeter not far from where Mr. Harris was stopped.  At the suppression hearing, Detective Baaske testified that he wanted to convey to Mr. Harris that they were searching for evidence of a robbery, not drugs, because he wanted to keep secret the wiretap of Mr. Taylor's telephone.  When Detective Baaske then asked Mr. Harris for his consent to search the car, Mr. Harris agreed.

A canine unit arrived on the scene moments later, and Detective Baaske again asked Mr. Harris if he would agree to a police search of the car.  Mr. Harris again agreed.  Detective Baaske asked the woman in the car to remove the infant

4

from the car, and the woman picked up the infant and a baby bag. Detective Baaske asked the woman to "just leave the baby bag there for now," and the woman complied. The police dog then entered the car and alerted to the baby bag. When Detective Baaske opened the bag, he discovered a plastic bag filled with white powder which agents later determined to be cocaine.

Mr. Harris moved to suppress the cocaine found in his car, arguing his consent was improperly obtained by deceit and, therefore, that consent to the search was involuntary. He also contended that any consent to search the car did not amount to consent to search the baby bag. After holding a hearing, the magistrate judge recommended that the motion be denied, concluding that Mr. Harris's consent was immaterial because the officers had probable cause to search the car for drugs. The district court agreed, and, over Mr. Harris's objections, denied the motion to suppress. Mr. Harris then entered into a conditional guilty plea in which he reserved his right to appeal the district court's ruling on the motion to suppress. This appeal followed.

## II.

In reviewing a district court's denial of a motion to suppress, we examine the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Ramirez*, 476 F.3d 1231, 1235 (11th Cir. 2007). Further, when considering a motion to suppress, we construe the district

5

court's factual determinations in the light most favorable to the prevailing party, here, the government. *See United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007).

III.

Although ordinarily a warrantless search or seizure is *per se* unreasonable, and therefore violative of the Fourth Amendment, police officers may perform a warrantless search of a vehicle if they have probable cause to believe the vehicle contains contraband or evidence of criminal activity. *See California v. Acevedo*, 500 U.S. 565, 569 (1991). So long as officers have probable cause to search the vehicle, cause justifies the search "of every part of the vehicle and its contents that may conceal the object of the search," including bags such as the one at issue here. *Id.* at 570 (internal quotation marks omitted).

Probable cause exists when "facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted). The inquiry is an objective one. *See Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the same standard of conclusiveness

6

and probability as the facts necessary to support a conviction." *Lee*, 284 F.3d at 1195 (internal quotation marks, citation, and alteration omitted).

We conclude the district court did not err in denying Mr. Harris's motion to suppress based on the officers' probable cause to search his car and its contents.[2] While monitoring the telephone communications of Mr. Taylor, a confirmed narcotics dealer, agents learned that someone with a 239 area code was making arrangements to buy cocaine from Mr. Taylor on a specific day. On that day, the 239 user notified Mr. Taylor when he arrived at a McDonalds close to the residence of Mr. Thompson, Mr. Taylor's supplier. Agents observed Mr. Harris's car at that same McDonalds location at the moment the 239 user's call went through to Mr. Taylor. Mr. Harris then drove his car to Mr. Thompson's residence, where Messrs. Thompson and Taylor met him. The three remained at the residence for some time, and then Mr. Harris and the 239 user's contact, Mr. Taylor, departed. Detective Baaske, who ultimately initiated the search, knew all of these facts. When Detective Baaske lawfully stopped Mr. Harris for driving with a broken tail light, he saw that Mr. Harris resided in Fort Myers, which corresponded with the 239 area code. All of this information — the known activity of Messrs. Taylor and Thompson, the timing and frequency of communication between Mr. Taylor and the 239 user, the fact that the 239 user's telephone calls

---

[2] Like the magistrate judge and the district court, we make no decision regarding the validity of Mr. Harris's consent to the search or its impact on the motion to suppress.

corresponded precisely with Mr. Harris's activity on the day of the drug buy, and Detective Baaske's confirmation that Mr. Harris's address matched the area of the 239 area code — would have caused a reasonably prudent officer in Detective Baaske's position to believe that Mr. Harris had just purchased cocaine at Mr. Thompson's residence. *See Lee*, 284 F.3d at 1195. With probable cause to make an arrest on that basis, Detective Baaske was within his authority to search Mr. Harris's car and its contents. *See Acevedo*, 500 U.S. at 569-70.

IV.

For the reasons set forth above, we affirm the district court's denial of Mr. Harris's motion to suppress.

**AFFIRMED.**