[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10214
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-00036-WS-B-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBIN BARNARD WILLIAMS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 16, 2019)

Before WILSON, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Robin Williams appeals the district court's denial of his motion to suppress evidence.[1]  He contends that the district court erred in denying his motion to suppress because it incorrectly concluded that the officer's questions to him—*i.e.*, where a firearm was located in a home—prior to giving him *Miranda*[2] warnings fell within the public safety exception to the *Miranda* requirement.

"With regard to the motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*."  *United States v. Newsome*, 475 F.3d 1221, 1223 (11th Cir. 2007).  We construe facts "in the light most favorable to the prevailing party below."  *Id*. at 1224.  "The individual challenging the search bears the burdens of proof and persuasion."  *Id*. (quotation omitted).

Custodial interrogation generally "cannot occur before a suspect is warned of his . . . rights against self-incrimination."  *Id*. (citing *Miranda,* 384 U.S. at 445).  An "interrogation" for *Miranda* purposes is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating

---

[1] Following the district court's denial of Williams's motion to suppress, he pled guilty pursuant to a plea agreement.  In the written plea agreement, both parties agreed that Williams reserved the right to appeal the district court's denial of his motion to suppress.  Both parties on appeal agree that the district court's lack of consent to this conditional plea was harmless and we can still address the merits of Williams's appeal.  We agree with the parties.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

However, the Supreme Court has carved out a "narrow exception to *Miranda* for

situations where there is a threat to public safety." *Newsome*, 475 F.3d at 1224

(citing *New York v. Quarles*, 467 U.S. 649, 657-58 (1984)).

We have previously explained the public safety exception to *Miranda* and

the case it arose out of, *Quarles*, as follows:

> The public safety exception allows officers to question a suspect
> without first Mirandizing him *when necessary to protect either
> themselves or the general public*. For example, in *Quarles*, an armed
> suspect ran into a crowded supermarket where he was apprehended by
> the police. The officers searched the suspect and found an empty
> shoulder harness. Without first giving the Miranda warnings, they
> asked him where he had put the gun. The suspect told the officers that
> the gun was under some empty cartons in the store, and the gun was
> recovered. The Court determined that even though the suspect was
> handcuffed and posed no threat to the officers when questioned, the
> interrogation was permissible because the gun created a clear danger
> to the public. The Court held that *the need for answers to questions in
> a situation posing a threat to the public safety outweighs the need for
> the prophylactic rule protecting the Fifth Amendment's privilege
> against self-incrimination*.

*Id*. at 1224-25 (citing and quoting *Quarles*, 467 U.S. at 651-52, 655-59) (emphasis

added; internal citations and quotation omitted).

Although the name to the exception implies that it is only available when

officers are concerned for the general public, "[t]he exception to *Miranda* also

applies where there is a threat to the officers rather than the public." *Id*. (citing

*Quarles*, 467 U.S. at 659). Under the public safety exception to *Miranda*, "both a

3

defendant's statement—and the physical evidence recovered as a result of that statement—may be admitted into evidence at trial." *Id*. (quotation omitted). The Supreme Court explained in *Quarles* "that the availability of [the public safety] exception does not depend upon the motivation of the individual officers involved," and that "where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the [public safety] exception . . . should not be made to depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer." *Quarles*, 467 U.S. at 656.

We have not had many opportunities to apply the public safety exception. In *Newsome*, we held that public safety exception to *Miranda* applied when officers entered a motel room under the impression that there were at least two people in the room, the officers knew that they were dealing with a possibly armed and violent felon, and there was a very rapid sequence of events. *Id*. at 1225. There the officers questioned the defendant about "whether anything or anyone else was in the room right after the officers ordered him to the ground and while he was being secured," and once the defendant informed officers that there was a gun in the room, they asked where the gun was. *Id*. at 1223, 1225. At the same time other officers were securing the room and had a reason to suspect that there was another person present, and thus, we stated that officers "reasonably believed that

they were in danger, and they acted accordingly to protect themselves and other motel guests in making the arrest." *Id.*  We also concluded that although the officer's initial question was broad, we did not find it problematic because "[a]n officer is not expected to craft a perfect question in the heat of the moment."  *Id.*

Similarly, in *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009), we held that an officer's questions directed to the defendant fell within the public safety exception to the *Miranda* requirement.  In *Spoerke*, an officer pulled over a vehicle with four occupants, and, during the traffic stop, the officer observed several items that led him to believe that the individuals were involved in a burglary.  *Id.* at 1241.  The officer also saw a food bag on the floorboard of the vehicle that contained two duct-taped balls with a green string attached, which he suspected to be improvised explosive devices.  *Id.*  After asking all the occupants to exit the car and frisking them, the officer asked the occupants, without providing *Miranda* warnings, what the devices were, to which the defendant responded that they were "pipe bombs."  *Id.*  The officer then asked what the devices were made out of, and the defendant responded that they were made out of PVC.  *Id.*  We held that the officer's questions fell within the public safety exception because the officer's questions "were designed to discern the threat the bombs presented to the officer and the nearby public," and because "[t]he threat posed by two pipe bombs in a vehicle on a city street outweighs the need for the prophylactic rule protecting

the Fifth Amendment's privilege against self-incrimination." *Id*. at 1249 (quotation omitted).

Here, the district court did not err in applying the public safety exception to Officer Bryant's questions to Williams regarding the location of firearm.  As an initial matter, the district court considered the subjective motives of Officer Bryant, to a certain extent, in deciding whether the public safety exception applied. However, the Supreme Court has made clear that the subjective motives of the officers are not to be considered in determining the applicability of the public safety exception to a certain set of facts, but rather the inquiry is an objective one.

Nonetheless, a pure objective view of the officer's questions leads to the same result.  Officer Bryant's questions as to the location of the firearm were proper to protect himself, his fellow officer, and the other individuals on the scene, and thus fell within the public safety exception.  Officer Bryant explained that he and his partner were dispatched to a domestic dispute and that there was a weapon present.  He explained that more than one officer is typically dispatched to domestic disputes for safety reasons.  Both officers testified, and the video evidence showed, that there were multiple people at the house, including young children, some of whom were upset that Williams was being arrested.  The officers testified that the complaining party, who remained at the scene, was beginning to grow agitated with Williams's children.  Finally, when she informed officers that

6

there was a gun in the house, Officer Bryant immediately asked Williams if he knew where it was located because the complaining party was looking for it and "little kids [were] in the house." He did not ask Williams if it was his gun, where the gun came from, or how he obtained the gun, but only if he knew the gun's location. Although the officers did not initially inquire as to the whereabouts of the firearm when they first arrived, despite the dispatch report stating that there was a weapon present, they did respond quickly to an evolving situation that, although not initially hostile upon their arrival, began to become more hostile. The Supreme Court has emphasized that "in a kaleidoscopic situation . . . where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the [public safety] exception . . . should not be made to depend on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer." *Quarles*, 467 U.S. at 656. Accordingly, Officer Bryant acted accordingly to protect the safety of all individuals present, and thus we affirm.

     **AFFIRMED.**