[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10034
Non-Argument Calendar

_____

D.C. Docket No. 1:11-cr-20446-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOEL MARTINEZ HERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 20, 2012)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

This is a Medicare fraud case, involving money laundering of Medicare

payments and avoidance of currency transaction reporting requirements.  On June 30, 2011, a grand jury returned a 17-count indictment against Joel Martinez Hernandez, charging him in Counts 1 through 8 with money laundering, in violation of 18 U.S.C. § 1957, in Counts 9 through 15 with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and in Counts 16 and 17, for the purpose of evading the currency transaction reporting requirements of 31 U.S.C. § 5313(a), attempting to cause Bank of America to fail to file a report required under § 5313(a) while he was violating another law of the United States as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of 31 U.S.C. § § 5324(a)(1) and (d)(2) and 31 C.F.R. pt. 103.  A jury convicted Hernandez on all counts, and the District Court sentenced him to concurrent prison terms of 84 months.  He now appeals his convictions.

Hernandez argues that the District Court erred in denying his motion for judgment of acquittal (1) on Counts 1 through 8 of the indictment, because the Government failed to prove that he knew that the transactions to which he was a party involved the proceeds of illegal activity; (2) on Counts 9 through 15, because the Government failed to prove that he knew either that an entity from which he received $350,000 was fraudulently billing Medicare or that the $350,000 represented the proceeds of the fraud; and (3) on Counts 16 and 17,

2

because the Government failed to prove that he knew that attempting to avoid the currency transaction reporting requirement was illegal.  Alternatively, Hernandez argues that if we deny him a judgment of acquittal on all counts, we should grant him a new trial on the ground that the court  abused its discretion in denying his motion for a mistrial based on the prosecutor's comment regarding his right to remain silent.  We find no merit in Hernandez's arguments and therefore affirm his convictions.

## I.

We review *de novo* whether the evidence was sufficient to sustain a conviction.  *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009).  We take the evidence in the light most favorable to the Government, making all reasonable inferences and credibility choices in favor of its case.  *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010).

The credibility of witnesses' testimony is a matter for the jury to decide. We assume that the jury resolved the credibility issues in a manner supporting its verdicts.  *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006). Testimony will not be considered incredible as a matter of law unless it is incredible on its face, such as testimony as to facts the witness could not have observed or events that could not have occurred under the laws of nature.  *United*

3

*States v. Thompson*, 422 F.3d 1285, 1291 (11th Cir. 2005).  The testimony of an accomplice can be sufficient to prove guilt, even though the witness is, for example, an admitted wrongdoer, and even if the testimony is uncorroborated.  *See Craig v. Singletary*, 127 F.3d 1030, 1044-45 (11th Cir. 1997) (en banc); *United States v. Andrews*, 953 F.2d 1312, 1318 (11th Cir. 1992).  Moreover, a defendant's statement, if disbelieved by a jury, may be considered as substantive evidence of guilt.  *United States v. McDowell*, 250 F.3d 1354, 1367 (11th Cir. 2001).

## II.

To obtain a § 1957 conviction on Counts 1 through 8, the Government had to prove: (1) that the defendant knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, and (2) that the property was derived from specified unlawful activity. *See* 18 U.S.C. § 1957(a); *United States v. Silvestri*, 409 F.3d 1311, 1332-33 (11th Cir. 2005).  The Government need not prove that the defendant knew that the property was derived from "specified unlawful activity"; it only needs to prove that the defendant knew that the property was criminally derived.  *See* 18 U.S.C. § 1957(c); *United States v. Baker*, 19 F.3d 605, 614 (11th Cir. 1994).  Hernandez only challenges the knowledge element of the § 1957 offense, arguing that the Government did not prove that he knew the funds he received were derived from a

4

criminal offense.

The evidence established that Hernandez received $356,000 from Mercy Medical, a Medicare provider. Mercy Medical provided a variety of services and items to Medicare beneficiaries, including visits to doctors' offices, hospital stays, and durable medical equipment. Between February 2005 and February 2008, Mercy Medical submitted claims to Medicare totaling $12.8 million for the treatment of approximately 882 patients and the provision of 18,776 items to beneficiaries. Medicare allowed over $8 million in claims and paid Mercy $6.4 million.

Mercy billed Medicare an average of $14,000 per patient, including $446,238 in illegitimate claims for services and items furnished to patients after their death. For example, Mercy submitted claims for services to 223 beneficiaries pursuant to prescriptions from only one doctor, who wrote prescriptions for only one of the beneficiaries. Another 226 beneficiaries received prescriptions from another doctor, who wrote none of the prescriptions. Hernandez obtained the patient lists needed to fabricate the bogus prescriptions, and he arranged for others to cash the Medicare checks to Mercy Medical. The evidence that he knew that the money he received was derived from criminal activity was overwhelming.

III.

5

Section 1956(a)(1)(B)(i) is known as the "concealment" provision of the money laundering statute, the violation of which "must follow in time the completion of the underlying transaction as an activity designed to conceal or disguise the origins of the proceeds." *United States v. Majors*, 196 F.3d 1206, 1211-12 (11th Cir. 1999) (quotation omitted); see also 18 U.S.C.§ 1956. To obtain a § 1956(a)(1)(B)(i) conviction on Counts 9 through 15, the Government had to prove that:

> (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of a statutorily specified unlawful activity; (3) the defendant knew the proceeds were from some form of illegal activity; and (4) the defendant knew a purpose of the transaction was to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

*United States v. Miles*, 290 F.3d 1341, 1355 (11th Cir. 2002). Once again, Hernandez claims that the Government failed to prove that he knew the funds were derived from healthcare fraud.

We are not persuaded. The same evidence that established Hernandez's violation of § 1957 established his violation of § 1956(a)(1)(B)(i). Hernandez knew that the funds he received were derived from a criminal offense. He does not dispute the Government proved the existence of a Medicare fraud scheme and that the funds he received were the proceeds of this scheme.

6

IV.

To obtain convictions on Counts 16 and 17, structuring financial transactions to avoid reporting requirements, the Government had to show that the defendant "cause[d] or attempt[ed] to cause a domestic financial institution to fail to file a report required" under the applicable currency transaction reporting statutes and regulations. *See* 31 U.S.C. § 5324(a)(1). In *Ratzlaf v. United States*, the Supreme Court held that, to convict a defendant for violating the anti-structuring laws, the Government had to prove that the defendant knew that the structuring in which he engaged was unlawful. 510 U.S. 135, 149 (1994). However, since *Ratzlaf*, Congress has amended § 5324, and to establish a violation of § 5324, the Government must now prove that the defendant acted with "a purpose to evade the filing requirement." *United States v. Vazquez*, 53 F.3d 1216, 1218 n.2 (11th Cir. 1995). Hernandez only challenges the statute's *mens rea* requirement, arguing that the Government failed to prove that he knew that the structuring in which he engaged was unlawful.

To convict Hernandez of structuring, the Government did not have to prove that he knew that the way he structured transactions was unlawful. Instead, all it had to prove was that he acted with a purpose to evade the reporting requirement. *See Vazquez*, 53 F.3d at 1218 n.2. The Government presented sufficient evidence

7

to establish that Hernandez purposefully acted to evade the reporting requirements.  The jury heard testimony that Hernandez told a co-conspirator that withdrawals had to be made for sums of less than $10,000 so that the Internal Revenue Service would not look into the transactions.  His bank statements reflected that, on three days, he made multiple cash withdrawals of amounts slightly less than $10,000.  A jury reasonably could conclude that he acted with "a purpose to evade the filing requirement."

## V.

We review the District Court's denial of a motion for a mistral based on a prosecutor's comment regarding a defendant's right to remain silent for abuse of discretion.  *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997).  Because a trial judge is in the best position to evaluate both the tone and demeanor of the prosecutor, *United States v. Wilson*, 149 F.3d 1298, 1303 (11th Cir. 1998), and the prejudicial effect of a statement or evidence on the jury, it is within that judge's discretion to grant or deny a mistrial, *United States v. Delgado*, 321 F.3d 1338, 1346-47 (11th Cir. 2003).

The Fifth Amendment forbids the Government from suggesting to a jury that a defendant's failure to testify may be taken as evidence of guilt.  *See Thompson*, 422 F.3d at 1298-99.  However, not every reference to a defendant's

8

failure to testify is a constitutional violation. *See id.* In determining whether a comment upon a defendant's invocation of his right to silence is impermissible, we consider whether the statement was manifestly intended to refer to the defendant's silence, or if it was of such character that a jury would "naturally and necessarily" take it to be a comment on the defendant's silence. *Dodd*, 111 F.3d at 869 (quotation omitted). The defendant bears the burden of establishing the existence of one of the two criteria. *United States v. Carter*, 760 F.2d 1568, 1578 (11th Cir. 1985). A court must consider the circumstances under which the statement was made. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). "[We] will not find that a prosecutor manifestly intended to comment on a defendant's failure to testify if some other explanation for the prosecutor's remark is equally plausible." *United States v. Chirinos*, 112 F.3d 1089, 1099 (11th Cir. 1997) (citation ommitted). Under the second part of the test, the question is not whether the jury "possibly or even probably" would view the remark as a comment on one's failure to testify, but whether the jury "*necessarily*" would have done so. *Carter*, 760 F.2d at 1578 (emphasis in original, quotations omitted).

Improper remarks at trial may be cured by an instruction from the district court. *See United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). Accordingly, the mistrial determination must be made in the context of the entire

9

trial, including curative instructions. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "When a district court gives a curative instruction, the reviewing court will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *Id.* (quotation omitted).

The District Court did not abuse its discretion in denying Hernandez's motion for a mistrial. First, the record does not demonstrate that the prosecutor manifestly intended to comment on Hernandez's invocation of his Fifth Amendment rights, which occurred in the middle of his interview with an FBI agent. *See Dodd*, 111 F.3d at 869. The prosecutor did not ask the testifying agent about Hernandez's response to the question of where the funds derived from the Medicare fraud went; nor did he ask whether Hernandez had invoked his right to remain silent.

Moreover, the line of questioning was not such that the jury would "naturally and necessarily" take it to be a comment on Hernandez's silence. *See Dodd*, 111 F.3d at 869. Hernandez initially waived his *Miranda*[1] rights and agreed to speak with the FBI agent. From the agent's testimony, the jury did not know that Hernandez invoked his right to remain silent during the interview after the agent asked about the location of the funds. Moreover, the prosecutor's

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

10

question—which asked whether the FBI's "trail ended with" Hernandez—was struck, and the District Court gave a curative instruction, which did not refer to the question, but reminded the jury that the prosecutor had the burden of proof and that the defendant did not have to testify or present any evidence whatsoever.  In the context of Hernandez's entire trial, and in light of the other evidence of his guilt, this isolated comment was not so highly prejudicial that it could not be cured by this instruction.  *See Newsome*, 475 F.3d at 1227; *Hernandez*, 145 F.3d at 1439.

For the foregoing reasons, Hernandez's convictions are

AFFIRMED.