**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Irene DAVIS, Defendant-Appellant.**

**No. 29779.**

United States Court of Appeals,
Fifth Circuit.

June 9, 1971.

Rehearing Denied July 2, 1971.

Craig Porter, San Angelo, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Fort Worth, Tex., Cecil Emerson, Asst. U. S. Atty., San Angelo, Tex., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before JONES, BELL and SIMPSON, Circuit Judges.

JONES, Circuit Judge.

Irene Davis has appealed her conviction of knowingly concealing and facilitating the transportation of heroin after it had been illegally imported into the United States in violation of 21 U.S.C.A. § 174. The appellant was sentenced to

seven years imprisonment. On appeal she challenges the sufficiency of the evidence used to sustain her conviction.

Taking the view of the evidence most favorable to the Government to support the verdict, as we are required to do,[1] the following facts appear from the record. Garfield Jefferson, a known drug addict and pusher, left Fort Worth, Texas, in October, 1969, in a borrowed truck, accompanied by the appellant. Evidence was admitted showing that information had been previously received by the Fort Worth police that Jefferson was going to Del Rio, Texas, on the Mexican border, to pick up some heroin. Prior to her arrest, the appellant was unknown to the Fort Worth police department and had no drug arrest record there. The truck was kept under surveillance by officers to San Angelo, Texas, where it was lost for some twelve hours. Surveillance was resumed in Del Rio. Jefferson was driving the truck. The truck left Del Rio and proceeded to an area below the Amistad Dam on the Rio Grande River. At this point, the truck was out of the sight of the officers for fifteen to twenty minutes. It returned to the view of the officers and proceeded from the dam area to Sonora, Texas, where it was stopped and searched by the officers. A package of heroin was found under the seat on the driver's side, lying loose on the floor of the truck.

Of importance in the Government's proof was the testimony of Cliff Wilson, Special Agent of the Bureau of Customs. On direct examination he gave the following testimony:

"Q Could you visually see the individuals in the pickup?

"A Yes, sir, I could.

"Q All right. Describe what happened, if anything, when the siren was blowing.

"A When the siren on Agent Galanos' car started, the Defendant Irene Davis immediately fell over into the seat, over into the floorboard.

I couldn't tell which, but she fell to the left toward the driver out of my vision.

"Q All right. And how long did she stay in this position, if you know, approximately?

"A Well, it would only be just a very short period of time, because we immediately got out as soon as the vehicle stopped and opened the door on the driver's side and announced who we, and got them out of the vehicle.

"Q All right. Who was driving the vehicle?

"A Garfield Jefferson was driving it.

"Q And where was Irene Davis, the Defendant, when you stopped the vehicle?

"A She was lying in the seat.

"Q All right. Now, I assume she was in the passenger's side. It was just a one-seated vehicle.

"A Her head was right up against Garfield's leg. Garfield Jefferson's leg."

Still later Officer Wilson testified:

"Q You had one car on the left side of the pickup with the siren on, and when the pickup came to a stop, there was a car on the right side?

"A Yes.

"Q That is the picture that anyone in that car would have seen, as far as the siren is concerned?

"A Mrs. Davis couldn't have seen my car or the vehicle that approached on the right, the only car she could have seen was Agent Galanos' car.

"Q How can you say that?

"A She never turned around. When Agent Galanos pulled up and turned on the siren, she fell over to the seat or floor of the pickup."

---

1. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

Wilson testified on cross-examination that independent of information he received from law enforcement officers at Fort Worth, he had received word from another source that Garfield Jefferson and an unknown Negro woman were going to the Del Rio area to pick up some heroin. During cross-examination, Wilson testified to the use in the narcotics traffic of the combination of a known addict and one relatively uninformed in methods of trafficking. In his testimony Wilson said:

"You wouldn't entrust this amount of heroin to a known addict who was particularly, as in the police terminology, strung, he is using heroin as heavily as what Garfield Jefferson was, and leave him in the sole custody of it."

\* \* \* \* \* \*

"I would trust that person who did not know anything about it [the manipulations of the narcotic traffic] to insure that Garfield Jefferson didn't try and steal. I would leave the manipulations of the dealing, the route to take to avoid discovery to the addict, but I would definitely have somebody there to guarantee me that he was going to bring that heroin to me. I wouldn't let him go without supervision."

In response to further questioning, on cross-examination Wilson testified:

"Q Do you think she [the Defendant] was the supervisory of the addict, Mr. Wilson?

"A I think so, yes.

"Q You think she was the supervisor?

"A I think that she was there to insure that Garfield was not to steal part of it.

"Q All right. With your police informants and with your nonpolice informants, who has ever told you to this very moment that this woman here, this woman here, would be a proper one to supervise a known drug addict? Now, who has ever put that idea in your mind?

"A Garfield Jefferson."

Following an interruption by the court, and its caution not to volunteer any statement of Jefferson's, Agent Wilson testified he had elicited such statement from Jefferson "out of the presence" of Mrs. Davis, who was nearby, and after she had been placed under arrest, appellant's counsel by further questioning procured the verification of Wilson's prior statement that he, Wilson, thought appellant Davis was the "supervisor" of the addict Jefferson, based on information received from police and non-police informers. Wilson stated that this was a correct interpretation of his earlier statement, and was based on his past experience of dealing with heroin addicts.

Appellant Davis testified that she had lived with Jefferson for a number of years and was the mother of two of his children. She testified that she had on a number of occasions accompanied Jefferson on his "business trips" of delivering and picking up grease and oil. She continued to accompany him on some of his trips later, notwithstanding having "throwed him out." The appellant asserts that she had believed that this particular trip was just one of Jefferson's usual business trips. Mrs. Davis testified that despite their relationship she had never noticed the needle marks and scars on Jefferson's arms. She stated that she did not know he was a drug addict.

A judgment of conviction, which is attacked on the ground of insufficient evidence, will be sustained on appeal if the evidence taken most favorably for the Government supports the verdict. *Cf.* Glasser v. United States, *supra.* The Government is entitled to the benefit of all inferences sustaining the conviction that may be reasonably drawn from the evidence. Moody v. United States, 5th Cir. 1967, 377 F.2d 175; Rua v. United States, 5th Cir. 1963, 321 F.2d 140, cert. denied 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 738; Riggs v. United States, 5th Cir. 1960, 280 F.2d 949.

The applicable law is thus stated:

"He [the Defendant-Appellant] further argues that the evidence, circumstantial as it was, was insufficient to connect the defendant in any way with the alleged narcotics.

"We don't think so * * *

"While this court has consistently held that a jury should exercise great caution in convicting on circumstantial evidence which was merely consistent with defendant's guilt and not wholly inconsistent with his innocence, in the end the rule which prevails has been stated and applied time and again, and was properly applied here. This rule is that in circumstantial evidence cases, the test to be applied on motion for judgment of acquittal and on review of the case on appeal is not whether, in the opinion of the trial judge or of the judges of the appellate court the evidence fails to exclude every hypothesis other than guilt, but rather there was evidence from which the jury might reasonably so conclude. Vick v. United States, 5 Cir., 216 F.2d 288." Knapp v. United States, 5th Cir. 1962, 311 F.2d 71.

See also, Rodella v. United States, 9th Cir. 1960, 286 F.2d 306, cert. denied 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199; United States v. Pinna, 7th Cir. 1956, 229 F.2d 216; Bates v. United States, 1955, 95 U.S.App.D.C. 57, 219 F.2d 30, cert. denied 349 U.S. 961, 99 L.Ed. 1283, 75 S.Ct. 891.

 In circumstantial evidence cases such as this, where the sufficiency of the evidence is in issue, the function of the court is to determine whether the evidence is such that the jury might reasonably find that it excludes every reasonable hypothesis except that of guilt. United States v. McGlamory, 5th Cir. 1971, 441 F.2d 130; United States v. Milton Jones, 5th Cir. 1970, 434 F.2d 232. Testimony from the appellant tending to show an absence of guilty knowledge does not preclude the jury from inferring that fact from other evidence. United States v. McGlamory, supra; United States v.

Jones, supra. The evidence to support the implicit finding of the guilty knowledge of the appellant was largely circumstantial.

 The evidence, including Mrs. Davis' explanation of her presence in the truck in which the heroin was found, her actions upon its being stopped, and the fact that she was accompanied by a long-time acquaintance who was a known addict, was before the jury. Also before the jury was her statement that although she and Jefferson had an intimate relationship over a considerable span of time, she had not observed the needle-marks and scars on his arms. This could have had a bearing upon the credibility of her testimony. The jury was justified in deciding that her guilt had been established beyond a reasonable doubt. The most convincing evidence of her guilt is perhaps the testimony that she was to act as a supervisor of Jefferson to prevent him from diverting to his own use the heroin which he had procured for another.

 It might be thought that the hearsay testimony of Treasury Agent Wilson would permit or perhaps require that the plain error rule be invoked and the judgment reversed. It has been held that testimony relating to information received from informers could be received out of the presence of the jury for the purpose of determining the validity of a search without a warrant. It is not admissible, over objection, on the issue of guilt or innocence and it may be plain error where such evidence has been admitted without objection. Landsdown v. United States, 5th Cir. 1965, 348 F.2d 405. However, "error that defendant has invited ordinarily does not require reversal." Wright, Federal Practice and Procedure: Criminal, 362, § 854. In the case before us there was no objection to the testimony of the witness Wilson on direct examination. On cross-examination counsel for the appellant elicited further information and stressed that which the Government had introduced. By so doing we are precluded from invoking the plain error rule and reversing because of

the production of this evidence. The case of Hurst v. United States, 5th Cir. 1964, 337 F.2d 678, is factually different from this case and is not here controlling.

If Mrs. Davis had been sent to "supervise" Jefferson in the transportation of the heroin, she would be guilty of the offense with which she was charged. The opinion of the witness Wilson that she had been so sent was with respect to an issue which the jury should determine. 32 C.J.S. Evidence § 446, pp. 59–61. Wilson's statement that he had been informed by Jefferson that Mrs. Davis was to "supervise" Jefferson was hearsay. This evidence was adduced not by the Government but by the appellant. We do not think that this is a case where we should be critical of the trial tactics of counsel for the appellant.

The evidence before the jury was sufficient to support the verdict of guilty and the judgment and sentence rendered thereon. The judgment and sentence of the district court is

Affirmed.