[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14856
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cr-00139-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAIMUNDO ANTONIO HOGAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 18, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

A federal jury convicted Raimundo Antonio Hogan, a felon, of possessing a

firearm in violation of 18 U.S.C. § 922(g)(1).  On direct appeal, Hogan contends

that the trial evidence was insufficient to support his conviction and that the district

court should have declared a mistrial based on a witness's comment about Hogan's criminal history.  We affirm.

## I.

On February 26, 2016, while patrolling in Jacksonville, Officer James Mills spotted a driver without a seatbelt passing by in a Ford Explorer.  Officer Mills radioed Officer John Faulkner and the two of them began to follow the car.  The driver accelerated; Officer Mills turned on his lights and siren and gave pursuit while Officer Faulkner took a different road to try to get ahead of and cut off the Explorer.  The Explorer slowed down and the passenger—Raimundo Hogan— jumped out of the car with a gun in his hand.  Hogan threw the gun and ran, and Officer Mills chased him.  The driver, Hogan's cousin Maurice, stayed in the car.

Darien Thomas, a civilian observer riding along with Officer Mills, saw Hogan throw the gun and could see it lying on the ground.  The gun remained there until Officer Mills returned from chasing Hogan (unsuccessfully), arrested Maurice, and then picked up the gun and placed it on top of his squad car.  Officer Faulkner intercepted Hogan and arrested him.  When Officer Faulkner arrived at the scene, he put the gun and other evidence into paper bags and placed the bags in the trunk of his squad car.  There is some discrepancy over how Officer Faulkner got the gun: Officer Mills testified that he handed the gun directly to Officer Faulkner, while Officer Faulkner said that he took the gun from Officer Mills's

2

squad car.  But in any event, Officer Faulkner brought the gun to the property room back at the sheriff's office and filled out a property-storage card.  He recorded the serial number as "KTV892."  In a report that Officer Mills prepared regarding the traffic stop, he recorded the serial number as "KYU892."

Special Agent Mark Latham from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) tested the gun to determine whether it met the statutory definition of a firearm.  He concluded that the gun had traveled in interstate commerce (one telling clue: it bore a "made in Austria" imprint) and that "if there was a projectile in the end of the casing it would have expelled it by the action of the explosive."  Special Agent Latham's report listed the serial number as "KTV892," but it listed the gun as being related to the investigation of another individual, "Jerminh Mose Johnson," rather than Hogan.

An indictment charged that Hogan "did knowingly possess, in and affecting commerce, a firearm, that is, A Glock, .40 caliber pistol, serial number KTV892, after having been convicted of a crime punishable by imprisonment for a term exceeding one year."  *See also* 18 U.S.C. § 922(g)(1).  Hogan pleaded not guilty and went to trial.  His first trial ended in a mistrial.  His second trial ended in his conviction.  On appeal, Hogan argues that the serial number mix-up rendered the evidence insufficient to support his conviction and that the judge should have

3

declared another mistrial because Maurice commented on Hogan's criminal history.[1]

## II.

"We review de novo the denial of a motion for acquittal and the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Tampas*, 493 F.3d 1291, 1297–98 (11th Cir. 2007) (internal quotation marks and citation omitted). "The jury is free to choose among alternative reasonable interpretations of the evidence," and its verdict will stand unless no reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Id.* at 1298.

We review the denial of a motion for mistrial for abuse of discretion. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007) (per curiam). "A mistrial should be granted if the defendant's substantial rights are prejudicially affected," which happens "when there is a reasonable probability that, but for the remarks, the outcome of the trial would have been different." *Id.* "We make this determination in the context of the entire trial and in light of any curative instruction"—and when a curative instruction was given, we "will reverse only if

---

[1] In his opening brief, Hogan also argued that the district court erred in applying the Armed Career Criminal Act to enhance his sentence. In his reply, however, Hogan expressly abandoned that argument in light of the Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019).

the evidence is so highly prejudicial as to be incurable by the trial court's admonition." *Id.* (internal quotation marks and citation omitted).

III.

### A. *Sufficiency of the Evidence*

"To prove that a defendant committed an offense under 18 U.S.C. § 922(g)(1), the government must show that (1) he or she knowingly possessed a firearm or ammunition, (2) he or she was previously convicted of an offense punishable by a term of imprisonment exceeding one year, and (3) the firearm or ammunition was in or affecting interstate commerce." *United States v. Palma*, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam). Based on the discrepancy between the serial number of the gun listed in Officer Mills's report and the serial number recorded by Officer Faulkner and Special Agent Latham and charged in the indictment, Hogan contends that the trial evidence was insufficient because "the government failed to establish that the firearm that the Appellant allegedly possessed was the firearm tested by ATF, and so, did not prove it travelled in interstate or international commerce, or was actually a 'firearm' within the definition of the statute." That argument—essentially a reprise of Hogan's trial defense—fails because a reasonable jury could have accepted Officer Mills's testimony that the incorrect serial number in his report was a typo.

5

The trial evidence set forth a straightforward chain of events linking Hogan to the gun charged in the indictment and tested by ATF. The testimony at trial established that Officer Mills and Darien Thomas saw Hogan throw a gun as he exited the Ford Explorer; Thomas saw the gun hit the ground and remained near it until Officer Mills retrieved it; Officer Mills photographed the gun before Officer Faulkner took it; Officer Faulkner entered the gun into evidence and recorded its serial number as KTV892; and Special Agent Latham tested the "KTV892" gun. A reasonable jury could have relied on this evidence to conclude that Special Agent Latham tested the gun that Hogan possessed, and therefore could have found Hogan guilty.

Hogan's counterarguments are unavailing. *First*, he emphasizes the error in Officer Mills's report about the gun's serial number and the discrepancy between Officer Mills's and Officer Faulkner's testimony about how Officer Faulkner recovered the gun.[2] But the jury was free to accept Officer Mills's testimony that the serial number in his report was a typo—indeed, the minor differences between "KTV892" and "KYU892" make that account entirely believable—and whether Officer Faulkner retrieved the gun from Officer Mills or from Officer Mills's squad car, the jury could have concluded that the gun he retrieved was the one that

---

[2] Hogan also refers to yet another error: in Special Agent Latham's report, one field erroneously identifies an individual by the name of "Jerminh Mose Johnson" instead of Hogan's name. Hogan did not raise this point until after trial, the district court concluded that it did not warrant a new trial, and Hogan has not raised the denial of his new trial motion on appeal.

Hogan had thrown.  *Second*, Hogan argues that Officer Mills's explanation for the error was based on hearsay—specifically, that he learned about the error and came up with the typo explanation based on a conversation with the prosecutor.  Even assuming that is true and constitutes hearsay, Hogan not only failed to object at trial but also *elicited* the alleged hearsay from Officer Mills on cross-examination.  As we have long said, "one may not be heard to complain about the admission of evidence where, as here, he introduced that very evidence himself."  *United States v. Truitt*, 440 F.2d 1070, 1071 (5th Cir. 1971) (per curiam); *see also United States v. Davis*, 443 F.2d 560, 564 (5th Cir. 1971).

Hogan was free to, and did, argue his "different guns" defense to the jury.  But the jury was free to, and did, reject that defense, and sufficient evidence supported its guilty verdict.

### B. Mistrial

When the government asked Maurice (Hogan's cousin) whether he had known Hogan his entire life, Maurice said that Hogan "was locked up most of my time I was growing up."  Hogan moved for a mistrial; although the parties had stipulated to Hogan's status as a felon, Hogan argued that "[i]f he was locked up most of this gentleman's life, then we know it's a very serious crime" because "[y]ou don't go to prison for a really long time for a non-serious crime."  That, he said, caused incurable prejudice.  The district court offered to give a curative

7

instruction immediately, but Hogan objected on the grounds that such an instruction would "bring more attention to it." The district court agreed not to give the instruction at that point. Hogan later agreed to both the language and the timing of a curative instruction to be given during the final jury instructions. That instruction explained to the jury:

> As you have heard, the defendant has previously been convicted of a felony. It is important to remember that the defendant is not on trial here for that previous felony. The details and circumstances of that previous felony conviction are not relevant to your consideration. You should focus on the other element of the crime, whether the government has proved beyond a reasonable doubt that the defendant knowingly possessed a firearm in or affecting interstate or foreign commerce.

Similarly, in another instruction, the court admonished:

> I caution you that the defendant is on trial only for the specific crime charged in the indictment. You're here to determine from the evidence in this case whether the defendant is guilty or not guilty of that specific crime.

On this record, and in light of the district court's curative instruction, there is not a reasonable probability that—but for Maurice's comment—the outcome of the trial would have been different. We have held that "where the comment is brief, unelicited, and unresponsive, adding nothing to the government's case, the denial of a mistrial is proper." *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009). Here, Maurice's comment was isolated. The government's question ("Have you known [Hogan] your whole life?") did not call for Maurice's

response.[3]  And Hogan's status as a convicted felon, which was stipulated and known to the jury, added nothing to the government's case regarding Hogan's possession of the gun.  Moreover, the district court gave a curative instruction and Hogan agreed to both the language of the instruction and its timing (during final jury instructions rather than immediately).  Maurice's comment was not "so highly prejudicial as to be incurable by the trial court's admonition."  *Newsome*, 475 F.3d at 1227 (internal quotation marks and citation omitted).  Considering "the context of the entire trial" and the mitigating effect of the curative instruction, *id.*, there is no reasonable probability that the outcome would have been different but for Maurice's comment.  *Cf. United States v. Beasley*, 2 F.3d 1551, 1559 (11th Cir. 1993) (no mistrial where witness said he met defendant in prison); *United States v. Veteto*, 701 F.2d 136, 139–40 (11th Cir. 1983) (no mistrial where witness said that defendant had mentioned prior incarceration).

*    *    *

Because the evidence at trial amply supported the jury's verdict and the stray comment about Hogan's incarceration did not require the district court to declare a mistrial, Hogan's conviction and sentence are **AFFIRMED.**

---

[3] Hogan argues that Maurice had volunteered a similar statement before the grand jury, and that the government therefore should have expected it.  The district court considered that point, and in light of the government's question at trial and the nonresponsive nature of Maurice's answer, it was not an abuse of discretion to reject this argument.