[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12075

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSE ANTONIO CANARIO-VILOMAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20019-BB-3

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Jose Antonio Canario-Vilomar appeals his sentence of 110 months' imprisonment for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine on a vessel subject to the jurisdiction of the United States. Canario-Vilomar makes three arguments on appeal. First, Canario-Vilomar contends that the district court lacked subject-matter jurisdiction over the relevant vessel because the government did not provide a certification from the Secretary of State under 46 U.S.C. § 70502(d)(2). Second, Canario-Vilomar argues that the district court erred in determining the amount of cocaine involved for purposes of his sentence calculation. Third, Canario-Vilomar claims that the district court erred by denying him a minor role adjustment under U.S.S.G. § 3B1.2.

After careful review, we affirm Canario-Vilomar's sentence.

## I.    FACTUAL AND PROCEDURAL HISTORY

The government alleges the following facts. On or about December 6, 2021, a Dutch DH-8 Maritime Patrol Aircraft located a go-fast vessel (the "Vessel") approximately 145 nautical miles north of La Guajira, Colombia, in international waters and upon the high seas. This prompted the HNLMS Holland, manned by the United States Coast Guard, to investigate the Vessel. Canario-Vilomar, his brother, and another individual were aboard the Vessel. Upon the arrival of the Coast Guard, one of the three individuals on board claimed Dominican Republic nationality for the Vessel.

That individual was identified as the master of the Vessel.  The Coast Guard then contacted the authorities of the Dominican Republic, which expressed that they could neither confirm nor deny registry of the Vessel.  Thus, the Coast Guard treated the Vessel as a stateless vessel under 46 U.S.C. § 70502(d)(1)(C) and conducted a full law enforcement boarding.  At that point, the Coast Guard located on the Vessel nineteen bales and three individual packages containing cocaine.  The Coast Guard recovered another ten bales from the jettison field.  Following these discoveries, the Coast Guard transported the three individuals to the Southern District of Florida for prosecution.

The government filed a criminal complaint on December 16, 2021, finding probable cause to charge the three individuals with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70506(b).

On January 20, 2022, a grand jury returned a two-count indictment against the three defendants, charging them with conspiracy to possess cocaine aboard a vessel in violation of 46 U.S.C. § 70506(b) (Count 1) and possession with intent to distribute cocaine aboard a vessel in violation of 46 U.S.C. § 70503(a)(1) (Count 2).

Around two months later, all three defendants entered guilty pleas.  Along with his guilty plea, Canario-Vilomar filed a factual proffer.  In that proffer, Canario-Vilomar agreed that the government would have been able to prove beyond a reasonable

doubt the version of events discussed above—i.e., that the Coast Guard approached the Vessel on December 6, 2021; that one of the three individuals on board claimed Dominican Republic nationality for the Vessel, but authorities from the Dominican Republic could neither confirm nor deny the Vessel's registration; that the Coast Guard subsequently seized nineteen bales and three packages from the Vessel, along with ten bales from the jettison field, which testified positive for the presence of cocaine; and that the volume, packaging, and transportation of the cocaine was consistent with the intent to distribute.

On April 7, 2022, the three defendants jointly moved to withdraw their guilty pleas and dismiss the indictment. In that motion, the defendants challenged jurisdiction by arguing that 46 U.S.C. § 70502(d)(1)(C) is facially unconstitutional. The district court denied the motion in full.

On June 10, 2022, the district court entered judgment against Canario-Vilomar on Count 1—i.e., conspiracy to possess cocaine aboard a vessel in violation of 46 U.S.C. § 70506(b)—and sentenced him to 110 months in prison followed by two years of supervised release. The district court dismissed Count 2—i.e., possession with intent to distribute cocaine aboard a vessel in violation of 46 U.S.C. § 70503(a)(1)—on the government's motion.

Canario-Vilomar subsequently filed a timely notice of appeal.

## II.    STANDARDS OF REVIEW

"We review a district court's interpretation and application of a statute concerning its subject-matter jurisdiction *de novo*, but we review factual findings with respect to jurisdiction for clear error." *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016).  "We review for clear error a district court's determination of the drug quantity attributable to a defendant," *United States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015), as well as a district court's denial of a role reduction, *United States v. Valois*, 915 F.3d 717, 731 (11th Cir. 2019).  Under the clear error standard, "we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been made."  *Id.*

## III.    ANALYSIS

As previewed, Canario-Vilomar's arguments on appeal concern subject-matter jurisdiction, the district court's determination of the amount of cocaine attributable to him, and the district court's denial of a minor role adjustment.  We address these arguments in turn.

### A.  Subject-Matter Jurisdiction

Under the Maritime Drug Law Enforcement Act, a vessel without nationality is subject to the jurisdiction of the United States.  46 U.S.C. § 70502(c)(1)(A).  The statute defines a "vessel without nationality" to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally

assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C). The statute clarifies that the response by a claimed nation of registry "may be made by radio, telephone, or similar oral or electronic means, and is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2).

Canario-Vilomar contends that the government failed to meet its burden of establishing subject-matter jurisdiction—and that the district court erred by finding otherwise—because the government neither produced nor claimed the existence of a certification from the Secretary of State confirming the Dominican Republic's response on December 6, 2021. But as this Court has explained, the notion that the government "*must* produce a certification when subject-matter jurisdiction is based on [46 U.S.C. § 70502(d)(1)(C)] is unsupported by the language of [46 U.S.C. § 70502(d)(2)]." *United States v. Cabezas-Montano*, 949 F.3d 567, 589 n.15 (11th Cir. 2020) (emphasis added). "While a certification provides *conclusive* proof of the foreign nation's response, [46 U.S.C. § 70502(d)(2)] does not state that the response cannot be proven by other means." *Id.*

In this case, Canario-Vilomar's factual proffer confirms that, when the Coast Guard approached the Vessel, one of the three individuals on board "made a verbal claim of Dominican Republic nationality for the [Vessel]" and that authorities from the Dominican Republic "advised [that they] could not confirm nor deny registration of the [Vessel]." That proffer, along with the affidavit of

Alec M. Sanchez  and the other record evidence, provided a sufficient basis for the district court to determine that the Vessel satisfied 46 U.S.C. § 70502(d)(1)(C) and therefore subject-matter jurisdiction exists.  We find no error on this point.

## B.  Amount of Cocaine

For sentencing purposes, "[t]he government bears the burden of establishing drug quantity by a preponderance of the evidence." *Azmat*, 805 F.3d at 1046.  To meet that burden, the government must "present[] reliable and specific evidence." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).  In this case, the district court found the government's showing sufficient to establish that Canario-Vilomar was responsible for at least 450 kilograms of cocaine.  This determination was based on, among other things, the DEA 7 report produced by the government, which states that the property seized had a gross weight of 561.7 kilograms and includes an inventory listing 493 kilogram-sized bricks.

Canario-Vilomar contends that the district court's determination was clear error for several reasons.  First, Canario-Vilomar argues that the DEA 7 constituted hearsay and therefore, in order to consider it, the district court was required to make a finding about its reliability.  During the sentencing hearing, however, Canario-Vilomar acknowledged the DEA 7 as "a reliable document." Thus, any error on this point was invited by Canario-Vilomar and does not warrant reversal. *See United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998) ("The doctrine of invited error is implicated

when a party induces or invites the district court into making an error."); *Ford ex rel. Est. of Ford v. Garcia*, 289 F.3d 1283, 1294 (11th Cir. 2002) ("Where invited error exists, it precludes a court from 'invoking the plain error rule and reversing.'" (quoting *United States v. Davis*, 443 F.2d 560, 564–65 (5th Cir. 1971))).

Next, Canario-Vilomar argues that the amount offered by the government, 561.7 kilograms, was the *gross weight* of all the containers—meaning it "include[d] the weight of the boxes, pallets, and packing." But given that this gross weight greatly exceeds 450 kilograms, and considering the inventory included in the DEA 7 report and the rest of the evidence in the record, we do not find that the district court clearly erred by concluding that Canario-Vilomar was responsible for at least 450 kilograms of cocaine.

Finally, although the proffer recognizes that the government recovered ten bales from the jettison field, Canario-Vilomar insists that the proffer does not connect him to those bales in any way and therefore he cannot be held responsible for the cocaine contained in those bales. This argument is unavailing. Given the factual details and circumstances described in the proffer, along with the rest of the evidence, the district court did not clearly err by including the ten bales recovered from the jettison field in its drug quantity determination.

## C. Minor Role Adjustment

The Sentencing Guidelines provide that a defendant is entitled to a two-level decrease in his offense level if he was a minor

22-12075              Opinion of the Court                    9

participant in any criminal activity.  U.S.S.G. § 3B1.2(b).  A minor participant is one who is substantially less culpable than the average participant in the criminal activity and less culpable than most other participants in the criminal activity.  U.S.S.G. § 3B1.2, comment. (n.3(A), 5).  Thus, as we recognized in *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir. 1999) (en banc), two principles guide the determination of whether a defendant constitutes a minor participant: (1) the defendant's role in the relevant conduct and (2) the defendant's role compared to that of the other participants.

Furthermore, "[i]n 2015, the Sentencing Commission amended § 3B1.2's commentary to provide additional guidance regarding the minor role reduction."  *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th Cir. 2018).  According to that amendment, district courts should also consider (1) "the degree to which the defendant understood the scope and structure of the criminal activity"; (2) "the degree to which the defendant participated in planning or organizing the criminal activity"; (3) "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority"; (4) "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts"; and (5) "the degree to which the defendant stood to benefit from the criminal activity."  U.S.S.G. § 3B1.2, comment. (n.3(C)).

As these authorities indicate, the determination of whether a defendant is entitled to this reduction is a "fact-intensive inquiry" based on the totality of the circumstances. *See De Varon*, 175 F.3d at 940–46. And "[t]he defendant bears the burden of establishing his minor role in the offense by a preponderance of the evidence." *Cruickshank*, 837 F.3d at 1192.

In this case, Canario-Vilomar sought a minor role adjustment on the grounds that he (1) came from a poor family; (2) was not the master of the Vessel; (3) was not the "intellectual author" of the criminal offense; (4) was not going to receive "a greater portion of the proceeds"; (5) had no prior association with any of the individuals who provided the cocaine; and (6) was brought into the situation "by a father and a brother who had done this before." The district court denied Canario-Vilomar's request, and Canario-Vilomar now claims that this denial constituted clear error. We disagree. The district court recognized that Canario-Vilomar was less culpable than "the major transporters and owners of the [cocaine]," but noted and underscored that Canario-Vilomar presented no evidence that meaningfully distinguished the role he played in the charged offense from the roles played by the other two individuals aboard the Vessel. Given the absence of such evidence, the district court did not clearly err by concluding that Canario-Vilomar failed to meet the burden of establishing his minor role in the criminal activity.

## IV.    CONCLUSION

For these reasons, we affirm Canario-Vilomar's sentence of 110 months' imprisonment.

**AFFIRMED.**