[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15539
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00264-SDM-AAS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROSETTA VALERIE CANNATA,
FRED JOSEPH TURNER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(November 7, 2019)

Before ED CARNES, Chief Judge, JILL PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

A jury found Rosetta Cannata and Fred Turner guilty of distributing controlled substances, conspiring to distribute controlled substances, and conspiring to bring an alien into the United States at a place not designated as a port of entry. They both contend that the district court abused its discretion by refusing to grant a mistrial on the basis of certain evidentiary issues. Turner separately challenges the district court's refusal to give a jury instruction that he requested. Cannata separately challenges the sufficiency of the evidence to support some of her convictions and her sentence.

I.

Turner and Cannata ran the Gulfshore Pain and Wellness Centre, a pain management clinic with offices in Tampa and Punta Gorda, Florida. Turner was the clinic's only licensed medical doctor. Cannata was formerly a doctor, but she no longer had her medical license. At Gulfshore she worked as the business manager, handling the clinic's paperwork, licensing, expenses, and payroll.

In 2014 the United States Drug Enforcement Agency began investigating Gulfshore as a possible "pill mill." It sent undercover agents posing as patients to both of Gulfshore's offices. The agents discovered that Turner was prescribing large quantities of morphine, oxycodone, hydromorphone, and hydrocodone — in potentially dangerous combinations — without conducting physical exams. Turner also ignored red flags, writing prescriptions for people who admitted to past or

2

present drug abuse and to sharing their pills with others.  Cannata did not issue any prescriptions herself, but Turner often consulted with her during the agents' visits. Turner and Cannata also made comments suggesting that they knew their business was illicit: for example, Turner assured one undercover officer, who said he was looking for a "discreet" pain clinic, that Gulfshore tried to "fly under the radar," and Cannata told another agent that Turner watched the waiting room and parking lot "like a hawk" to make sure his patients were not abusing drugs too obviously.

The investigation reached its climax after Turner and Cannata asked one agent, who was posing as a charter fisherman, to help them smuggle Cannata's Hungarian former housekeeper into the United States from the Bahamas.  The agent agreed to help in exchange for a cash payment and more drugs, and he made detailed plans with the defendants over the course of several weeks.  As Turner and Cannata drove to meet the agent for their "departure" to the Bahamas, other agents pulled them over and arrested them.

A grand jury indicted Turner and Cannata on one count of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846; four counts of distributing a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and one count of conspiracy to bring an alien into the United States at a place not designated as a port of entry, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and (a)(1)(B)(ii).

3

Turner and Cannata took their case to trial. They moved in limine under Federal Rules of Evidence 403 and 404(b) to exclude certain evidence about Cannata's past: that she had lost her medical license and her DEA registration in 2003 after pleading guilty to state felony charges relating to her work for a pill mill operated by Dr. Ronald John Heromin. The court deferred deciding the issue until trial.

That evidentiary issue came up three times during trial. Two of those times were during the testimony of DEA Agent Brian Zdrojewski, who had posed as a patient at Gulfshore and had recorded his interactions with Cannata and Turner using a hidden camera. On the first day of trial the government showed the jury a video of Zdrojewski's initial visit to Gulfshore. In the video Zdrojewski asked Cannata, who was assisting Turner, whether she was a doctor. She answered, "Yeah, I'm a doctor too. . . . I'm retired, I'm just fooling around." The government paused the video and asked Zdrojewski why he had posed that question to Cannata. Zdrojewski said, "I knew that Ms. Cannata was a prior doctor, I believe she was an anesthesiologist, but no longer had her medical license." Before he could say much more, Cannata objected, citing the motion in limine. The district court sustained the objection. Cannata (joined by Turner) moved for a mistrial, but the court denied the motion, saying that any evidence that Cannata used to be a doctor was not "crucially measurably prejudicial" because the

jury did not know <u>why</u> she lost her license.  The court then instructed the jury to disregard the testimony.

Later that day the government showed the jury a video of Zdrojewski's fifth visit to Gulfshore.  At one point in the video Zdrojewski started talking to Cannata about "those clinics down south" and asked her how she and Turner knew Heromin.  Cannata said, "We go way back."  Zdrojewski commented that Heromin was "doing a lot of time."  At that point in the trial Cannata objected, again referring to the motion in limine.  She argued that evidence about her past association with Heromin was not probative of any issue except for her own bad character.  Turner adopted that argument.  The court sustained the objection, finding that the evidence had no probative value.  Both defendants also moved for a mistrial, but the court denied the motion, saying that the evidence was "harmless."

Cannata's past came out a third time during the government's cross-examination of Turner, who testified on his own behalf.  The government asked whether Cannata knew more than Turner about certain medical issues, Turner said, "She was an anesthesiologist, I was an orthopedic surgeon.  I wouldn't ask for . . . ."  Cannata then cut off Turner with an objection.  The court overruled the objection.

5

After the close of evidence Turner objected to the court's proposed jury instructions. He requested that the following instruction be added, which he took word-for-word from an unpublished opinion of this Court, United States v. Enmon, 686 F. App'x 769 (11th Cir. 2017):

> Whether the defendant acted outside the usual course of professional practice is to be judged objectively by reference to standards of medical practice generally recognized and accepted in the United States. Therefore, whether the defendant had a good-faith belief that he dispensed a controlled substance in the usual course of his professional practice is irrelevant.
>
> However, whether the defendant acted without a legitimate medical purpose depends on the defendant's subjective belief about whether he was dispensing the controlled substance for a legitimate medical purpose. Therefore, in order for the government to establish that the defendant was acting without a legitimate medical purpose, the government must prove beyond a reasonable doubt that the defendant did not subjectively believe that he was dispensing the controlled substance for a legitimate medical purpose.

See id. at 773. The court overruled the objection and gave the following instruction, a variation of the government's requested instruction, instead:

> Thus the defendant who is a licensed medical doctor can be found guilty of the offense [of distributing a controlled substance] only if the United States has proved the following, each of the following, beyond a reasonable doubt:
>
> First, that the defendant distributed, dispensed, or caused the distributing or dispensing of the controlled substance as charged; and,
>
> Second, that at the time of the distributing or dispensing the defendant knew that the defendant was distributing or dispensing a controlled substance not for the legitimate medical purpose and not in the usual course of professional practice.

6

A controlled substance is prescribed by a physician in the usual course of professional practice and, therefore, lawfully if the substance is prescribed by the physician as part of the physician's medical treatment of the patient in accord with the standards of medical practice generally recognized and accepted in the United States.

After deliberating, the jury found both Turner and Cannata guilty of all charges.

The United States Probation Office prepared Presentence Investigation Reports for both Cannata and Turner. Cannata's PSR recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing drugs. Cannata objected. The government introduced at sentencing a copy of the lease for Gulfshore's Tampa office, which Cannata had signed. It also introduced copies of Gulfshore's rent checks, nearly all of which Cannata had signed. In opposition Cannata produced Gulfshore's articles of incorporation, which showed that Turner had been the sole owner since 2011. The district court found that a § 2D1.1(b)(12) enhancement of Cannata's sentence was warranted. It sentenced both Cannata and Turner to 151 months in prison.

## II.

Cannata and Turner challenge the district court's failure to grant them a mistrial after the government, on three occasions, introduced evidence about Cannata's past. We review the district court's denial of a mistrial only for abuse of discretion. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). A trial judge has discretion to grant a mistrial because he is in the best position to

7

evaluate the prejudicial effect of a statement or evidence on a jury.  Id.  A mistrial should be granted if the defendant's substantial rights are prejudicially affected. Id.  That occurs when there is a reasonable probability that, but for the improper remarks, the outcome of the trial would have been different.  Id.  When a district court gives a curative instruction, we will reverse "only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition."  Id.

The district court did not abuse its discretion by denying the defendants' motion for a mistrial after Zdrojewski testified that Cannata used to be a doctor. The jury never heard why Cannata lost her medical license; without that context, the mere fact that Cannata used to be a doctor was not substantially prejudicial to her.  And just before Zdrojewski testified about Cannata's past, the jury heard Cannata herself say on video that she was a retired doctor.  See United States v. Funt, 896 F.2d 1288, 1296 (11th Cir. 1990) (affirming denial of mistrial where "the stricken evidence was merely summarization of documents already in evidence, and therefore the potential for prejudice was slight").  There was even less potential prejudice to Turner — the testimony showed only that he hired someone who used to be a doctor.  The district court, which was in the best position to evaluate prejudice, said that Zdrojewski's testimony was not measurably prejudicial.  And the district court gave the jury a curative instruction.

8

The same goes for the video of Cannata saying that she and Heromin "go way back." All the jury learned was that Cannata used to know another doctor who was in prison for some unknown crime. Nothing about that statement showed that Cannata herself had done anything wrong. And it did not implicate Turner at all. The district court was correct to rule that the jury's brief exposure to that evidence was harmless, particularly in light of the other independent evidence of guilt in the record. See Newsome, 475 F.3d at 1227 (explaining that "when the record contains sufficient independent evidence of guilt," any error in denying a mistrial is harmless).

Finally, the district court did not abuse its discretion when it overruled Cannata's objection to Turner's testimony that Cannata was once a doctor. Cannata's objection presumably was based on Rules 403 and 404(b). Rule 404(b) prevents the government from introducing extrinsic evidence of bad acts to prove the defendant's bad character. See United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004). Evidence is not extrinsic if it is "inextricably intertwined with the evidence regarding the charged offense." Id. (quoting United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998)). The evidence that Cannata was a former doctor was inextricably intertwined with the evidence of the charged offenses because it showed that Cannata knew what Turner was doing — it undercut her defense that she was just a clueless employee caught up in Turner's

9

scheme. It also explained why she was advising Turner on medical issues. It was not extrinsic.

As to the Rule 403 objection, any evidence that Cannata was a former doctor only minimally prejudiced her — the jury might have wondered why she no longer had her medical license, but it did not know that she had been forced to surrender her license as part of a plea deal. And the testimony did not prejudice Turner at all. On the other side of the scale, the evidence was probative of Cannata's intent and knowledge. The district court did not abuse its discretion by overruling Cannata's objection to the testimony.

## III.

Turner also challenges the district court's refusal to give the jury instruction that he requested. We review a district court's refusal to give a particular jury instruction for abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006). The failure of a district court to give an instruction is reversible error where the requested instruction (1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense. Id. at 947–48.

Regardless of whether Turner's proposed instruction was correct, it was already covered by another instruction the court gave. The court told the jury that

to find a physician defendant guilty of distributing a controlled substance, the jury had to find that "the defendant knew that the defendant was distributing or dispensing a controlled substance not for [a] legitimate medical purpose." So in substance the court gave Turner what he asked for. The court did not abuse its discretion by refusing to give any additional instruction.

IV.

Cannata moved for a judgment of acquittal at the end of the government's case-in-chief and at the close of evidence. The district court denied each motion. Cannata contends that the evidence was insufficient to support her convictions for counts one through four of the indictment — one count of conspiracy to distribute controlled substances and three counts of distributing a controlled substance. Each of the three substantive counts related to a different visit to Gulfshore by an undercover agent.

We review de novo the sufficiency of the evidence supporting a criminal conviction. United States v. Williams, 865 F.3d 1328, 1337 (11th Cir. 2017). We consider the evidence in the light most favorable to the jury's verdict, drawing all reasonable inferences and making all credibility choices in the government's favor. Id. The jury is free to choose among reasonable interpretations of the evidence, and the government's proof need not exclude every reasonable hypothesis of innocence. United States v. Tampas, 493 F.3d 1291, 1298 (11th Cir. 2007). We

11

will reverse a conviction based on insufficient evidence "only if no reasonable trier of fact could have found guilt beyond a reasonable doubt." Williams, 865 F.3d at 1337.

Count one of the indictment alleged that Cannata participated in a conspiracy to dispense controlled substances from March 2011 through July 2015 — the period when Gulfshore was in business. That charge required the government to prove that (1) there was an agreement between two or more people to unlawfully dispense controlled substances, (2) the defendant knew about the agreement, and (3) the defendant voluntarily joined the agreement. United States v. Azmat, 805 F.3d 1018, 1035 (11th Cir. 2015). The existence of an agreement may be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. Id. "A conspiracy conviction will be upheld if the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him." Id. (quotation marks omitted).

Counts two, three, and four of the indictment charged Cannata with aiding and abetting Turner, a physician, in unlawfully dispensing controlled substances. To prove that a physician unlawfully distributed a controlled substance, the government must establish that the physician knowingly and intentionally dispensed controlled substances without authorization. United States v. Joseph,

12

709 F.3d 1082, 1102 (11th Cir. 2013).  The distribution of prescription drugs is unauthorized when the prescription (1) is not for a legitimate medical purpose or (2) is not made in the usual course of professional practice.  Id.  To sustain a conviction under an aiding and abetting theory, the government must show that the defendant associated herself with a criminal venture, participated in it as something she wished to bring about, and sought by her actions to make it succeed.  Id.

That Cannata was present in the exam room when Turner was prescribing drugs was enough evidence for the jury to find her guilty of conspiracy.  The operation had all the hallmarks of a pill mill.  See Joseph, 709 F.3d at 1104 (upholding § 841 conviction where the record showed that the defendant "prescribed an inordinate amount of certain controlled substances, that he did so after conducting no physical examinations or only a cursory physical examination, that [he] knew or should have known that his patients were misusing their prescriptions, and that many of the combinations of prescription drugs were not medically necessary").  According to expert testimony presented at trial, Turner prescribed extremely high doses of medication to his patients in potentially dangerous combinations.  He did not physically examine his patients, even though his patient records said that he did.  He also wrote prescriptions for undercover agents who admitted to abusing drugs and to giving drugs to others.  A reasonable jury could have concluded that Cannata, a trained and experienced doctor, would

13

have recognized the hallmarks of a pill mill.  A reasonable jury could have inferred that Cannata would not have worked with Turner unless she had agreed to help him illegally distribute drugs, and also that he would not have allowed her to be present when he illegally distributed drugs unless she had agreed to help him.

And there was evidence that Cannata aided and abetted Turner in writing unlawful prescriptions for the undercover agents.  During Special Agent Jennifer Jackson's second visit to Gulfshore, Cannata heard Turner tell the agent not to "go crazy with the pain meds" because he couldn't "justify it" in light of her normal MRI results.  Yet Cannata helped Turner during that visit.  She also helped prescribe medications to another undercover agent, Task Force Officer Torres, after she and Turner were told that Torres had traded pills for oral sex.  And she helped Turner prescribe medications to Task Force Officer John Evans, who said he was looking for a "discreet" clinic, after Turner told him that Gulfshore tried to "fly under the radar."  There was more than enough evidence for a reasonable jury to have found Cannata guilty of counts two, three, and four.

## V.

Cannata also challenges the district court's imposition of a two-level sentence enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." We review that decision for clear error as a finding of fact.  United States v.

George, 872 F.3d 1197, 1205 (11th Cir. 2017).  The district court must find that fact by a preponderance of the evidence.  See id. at 1204.  A defendant "maintained" a place if she exercised control over or had a possessory interest in it. See § 2D1.1 cmt. n.17.  Cannata contends that the district court clearly erred when it found that she "maintained" Gulfshore's offices.

The district court's finding was not clear error because the evidence showed that Cannata had a possessory interest in and controlled activities at Gulfshore's Tampa office.  Cannata signed the lease for the Tampa office in her individual capacity.  And she signed the rent checks nearly every month — checks that she issued using clinic funds that she controlled.  Cannata also had effective control over activities in the Tampa office as Gulfshore's business manager.  Turner testified that Cannata "made the place run" and was in charge of the employees who worked there.  On that record the district court's imposition of the § 2D1.1(b)(12) enhancement was not error, much less clear error.[1]

---

[1] Cannata argues that we should consider her sentence enhancement in light of our decisions interpreting 21 U.S.C. § 856.  That statute makes it unlawful to "knowingly . . . maintain any place . . . for the purpose of manufacturing, distributing, or using any controlled substance."  Id. § 856(a)(1).  Under § 856 "[a]cts evidencing such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity are . . . evidence of knowingly maintaining the place . . . ."  United States v. Clavis, 956 F.2d 1079, 1091 (11th Cir. 1992).  Even under Cannata's suggested approach, we would come to the same conclusion.  The evidence showed that Cannata had "control" of the site as the business manager, "acquir[ed]" it and "rent[ed]" it by signing the lease and the rent checks, "supervis[ed]" the employees who worked there, and procured supplies for the site.  Id.

**AFFIRMED.**